All right, the next case we're going to hear is United States v. Bah, and Ms. Salmon, I guess we'll hear from you. Do you pronounce the L? Yes, Your Honor. Salmon. Yes, sir. Good morning, Your Honors. May it please the Court. My name is Elisa Salmon, and I'm appearing as appointed counsel for Appellant Mamadou Lamarana Bah. I also served as his appointed trial counsel in the Court below. The primary issue before the Court You know, that actually helps. We often get counsel, new counsel, and they can't answer questions such as raised by Judge Motz, and it's good to have the trial counsel up here trying to defend the case also. It certainly helps me as well, Your Honor, in understanding the record when I'm getting ready to present an appeal. Of course. Thank you, Your Honor. The primary issue that we're asking the Court to consider today is the appellant's position that the sentencing court committed significant procedural error when it sentenced Mr. Bah. Specifically, the trial court erred when it failed to announce or otherwise explain any extent or impact of the departure that it granted Mr. Bah for his cooperation under 5K1.1. As such, the Court failed to articulate Well, there was something, as I recall, that what the Court said is I'm granting the motion for departure,  the defendant is not going to receive as large a sentence as I otherwise would have imposed in my variant sentence. So the Court was saying I'm giving him credit. The one thing the Court did not say, did not quantify it, but the Court recognized the departure and gave recognition and said I'm giving a lesser sentence. Isn't that right? There was some ambiguity in that statement, Your Honor, which I think was important. The Court said this probably, and I can point you to the place that it is in the joint appendix, Your Honor, what I think the Court actually stated was this probably will essentially keep you from getting a higher sentence than you otherwise would have received. And so there was some ambiguity in that. Probably or possibly this may be giving you some benefit that I have not quantified. And I would also like to point out, Your Honor, that in the statement of reasons, in the file statement of reasons, the Court again states I'm departing. I'm departing from the top of the guideline range. This is on 214 of the joint appendix, Your Honors. I'm departing from the top of the advisory guideline range. It's full stop. I'm now veering upward from the advisory guideline range. Now, why is this important? I mean, that's the biggest question here. Why is this important as a procedural reasonableness question? Certainly, Your Honor, without knowing, let's say, for example, in our district it's quite common for the Court to give a percentage rather than a number. And as this Court has recognized in Pierce, United States v. Pierce, United States v. Fennell, there's no specific way that the Court has to articulate the extent of the departure. They can do a number. They can do a number of years. They can depart on the guidelines. They can do a percentage. The trial court has that ability to sort of fashion it in a way on a case-by-case basis. However, the Court must articulate the extent of the departure, and this is United States v. Pierce, which was then favorably cited in 2010 in United States v. Fennell. The Court must articulate and explain the extent of the departure and how much credit are you getting. And here that is simply unknown. It matters for a number of reasons, most importantly, perhaps, because Mr. Baugh has no understanding as he sits in Bureau of Prisons today whether or not he received any actual numerical credit for his cooperation. He knows only, as the Court articulated on the record, this is probably giving you a lower sentence than you would have otherwise gotten. In that respect, Your Honors, I'd point out he only received 12 months below the statutory maximum that he could have received. Haven't we said in the past that our review of downward departures is extremely limited? Yeah, that's an interesting issue, Your Honor. When Ms. Fritz, on behalf of the government, raised that in the briefing, I did a tremendous amount of unpacking to try to figure out if there was, perhaps, a jurisdictional element or some kind of limiting. But just it's within the statutory minimum? Yes, Your Honor. Yes, Your Honor, it is. And I understand that the discretionary choice of whether or not to grant the 5K motion is in and of itself a very discretionary determination by the Court. But once he has granted the motion, Gall places an obligation on the Court to explain and articulate how we're arriving at the sentence. So what we have here is two inconsistent sentencing rationales. In the standard case, you have a 5K 1.1 motion being advanced by the government. You have it being granted by the Court. And in the standard case, and I'm sorry that I don't have sentencing commission statistics for this, but at least in my experience, that results in somewhat of a below-the-guideline sentence or a middle or lower advisory guideline sentence. Now, this is an unusual case because the Court grants the 5K motion. It doesn't then say, the Court does not then articulate, okay, I'm giving you a 20 percent cut from the top of the guideline range. This puts you in approximately a 24-month range. However, in light of the 3553A factors, which the Court articulates extensively on this record, I concede that most certainly, I'm now going to vary upward and sentence you to 72 months. Now, importantly in this case, the aggravated identity theft conviction on count four is that mandatory 24 months. The Court, if you agree that the 3553 analysis was appropriate, and the Court has said regardless of whether my calculations are correct, that's where I would end up on this case because I've made the assessment. What are we arguing about? Are we arguing about the fact that you don't have the specific months that he would have departed and then the percentage that he would have applied? It seems to me that he maybe could have done that, but he did acknowledge he gave some credit for that. But the clear thing is whether the sentence he ultimately imposed was an appropriate sentence. Yes, Your Honor. What difference is it going to make if we say, okay, give us the number of months you would have imposed on the departure, I suppose, just to get some credit for it? I think it makes an extremely important difference in this case, Your Honor. Our case law says, as we all know, from Gall and every case after it, that deals with procedurally what does the Court still need to do. The Court needs to properly calculate the advisory guideline range, Your Honor. This is not a case where we contend that the Court did not properly calculate the advisory guideline range. I thought the Court did. That's not part of the guideline range. That's granting a departure. Right. The guideline range is okay, right? Right. There's no objection. In fact, we prevailed on our one guideline objection, Your Honor. So we do not, and we're not challenging the 24- to 30-month guideline range that the Court arrived at on appeal. The next step is the Court needs to decide, whether you call it a departure or you call it a variance, where does this person need to properly be sentenced? In this case, the Court granted a departure moving this way and a variance moving this way. And Gall and the post-Gall case law of this circuit says, in evaluating the extent of the variance, the upward variance, we need to look to see where the Court began. And, Your Honor, that's why it matters in this case, because we cannot, as the case law is very clear, the extent of an upward variance can only be evaluated when we know where you began. So, for example, and this is just a hypothetical, we have no idea how much credit under 5K1.1 the trial court gave to Mr. Baugh's cooperation. Say, for example, it was extremely extensive, and this is a hypothetical. This is not the facts, because we do not know how far this Court departed downward. But let's say, for example, that Mr. Baugh ended up being a cooperating witness for the government and testified at trial, and the Court had said, I'm going to depart downward 75 percent on count one. We're now at approximately 10 months, but you are such a wrongdoer for the reasons that I find under 3553A that I am now taking you up to the statutory maximum. Now, in assessing the reasonableness of that variance going up, the Court will look to say, okay, we're starting at 10 months. Are the 3553A factors articulated by the Court sufficient to support that jump from 10 months to 84 months, which is what the statutory maximum would have been in this case? So the fundamental reason that it needs to be articulated isn't just because Gaul says you have to articulate both your deviations and your variances. That's important, of course. But more fundamentally, it's because we cannot have meaningful appellate review of what the Court did in choosing to vary upward if we don't know where the Court began. We don't know how far we traveled unless where the car was initially parked. The district court all but said, I'm going to come out with this sentence no matter how I calculate it. I mean, and we've more or less blessed that kind of rationale, haven't we? You know, and, Your Honor, this is something that is also very standard. Our chief judge, who is the sentencing judge in this case, will routinely make a statement on the record exactly like the one made in this case. And if the Fourth Circuit should find that I calculated the guidelines erroneously, I'd like it to be known and pronounced that under Gomez, Jimenez, and Savion Matute, I would do the exact same thing. But, Your Honors, I think this case is different because the logical thrust behind Gomez, Jimenez, and Savion Matute is, okay, the appellant is complaining about a two-point enhancement or a four-point enhancement or a 12-point enhancement that they think didn't go their way. And if we look and say, granted, we now will just assume that you prevailed, we now know where that guideline range would be in Gomez, Jimenez, and Savion Matute. On those calculation-based cases, we now know that instead of 24 to 30 months, you're in the 20 to 26-month range. And we can say, even granted appellant, even assuming that there was an error, would it be reasonable for the court to have gone from 20 to 26 months all the way up to 72 months? Yes, but because you're dealing with a departure here and a departure downward, there's even more discretion to not. So I understand the difference, but I'm not sure the difference helps you. I think it does. And I think that the reason it does is because that second prong is articulated by Judge Gregory in Gomez, Jimenez. The second prong is, is the sentence that resulted reasonable? Are we still certain that the sentence that was imposed was reasonable? I thought that you, in response to a question from Judge Niemeyer, all but conceded that. Oh, no, Your Honor, we're not. No, I said that he articulated extensive reasons for his 3553A decision. The substantive reasonableness of this sentence, Your Honors, is very much challenged by the appellant for the reasons set forth in the brief and that I'm happy to address. I simply am making a distinction between he did not sufficiently articulate. But this argument that you have about the departure goes to substantive reasonableness, right? No, Your Honor. I mean, it goes to procedural reasonableness. Procedural reasonableness, correct, correct. But as to the did the judge articulate 3553A rationale, which it claims are supportive of the ultimate decision it made, there is extensive information on the record which this Court states why he believes this sentence is appropriate. As to the substantive reasonableness, Your Honors, the appellant challenges the substantive reasonableness of this sentence. What's the challenge? Well, Your Honors, the Court did go into some detail about this and this defendant is problematical. It was certainly a difficult day in court for my client and I. However, Your Honors, the substantive reasonableness challenge is that, for example, there were certain statements on the record. Now, in addition to the fact that I think the substantive analysis has a structural problem in this case because, again, we do not know where that departure took us. So we don't know where we're starting. So I think that that makes the appellate review of where he ended up difficult and that is, I believe, the primary issue as to the procedural question. But the substantive reasonableness standard is so difficult to meet. I think there's one case in this circuit which we found something substantively unreasonable. And recently there was a case out of our district that was substantively unreasonable. I think it was a departure to a life sentence from this trial court. But, yes, Your Honor, it's a very high standard. The substantive reasonableness in this case, the court states, you are a fraudster to your core. I think that's the case I was talking about. I think I was on the panel. Go ahead. Yes, Your Honor. And the court in our case makes a lot of those similar kind of statements to Mr. Baugh. Mr. Baugh, you are a fraudster to your core. The problem with that is Mr. Baugh, before the offense conduct in this case, had one misdemeanor driving while impaired conviction. He was 25 years old. He was a recent immigrant to the United States. This is not your standard fraud defendant where, by the time they find themselves in federal court, they have racked up 25 worthless checks and every kind of credit card thing you can see. This was his first interaction with the federal court system. But it was ongoing and repetitive and relentless and daily. This was a way of life. This was not an erroneous commission of a crime where I slugged somebody in the bar and I shouldn't have done it. The court laid all that out. Yes, Your Honor. And that was certainly extensive. The other challenge to the substantive reasonableness of the sentence was that the court made numerous statements related to the immigration status of the defendant in this case, expressing great concern over the fact that as a recent immigrant, he had squandered what the court perceives to be a tremendous opportunity to come to this country. And it certainly is. But isn't that by judge after judge? I mean, you come to this country with the freedoms and the responsibilities. You're relieved from the conditions of your home country and you come here and then abuse it. He can say that, can't he? That's not discrimination. And, Your Honor, it is not. There's no allegation from the appellant, from the defendant in this case, that Judge Devert was making some kind of affirmatively discriminatory statement. But you had a golden ticket to get yourself out of your bad circumstances and you had an opportunity to make a life for yourself that was productive and free and enterprising. And this guy comes and abuses that. I think that was his point. And I certainly understand the countervailing argument to my position, Your Honor. And as Mr. Baugh's trial counsel, I felt my duty to raise an issue that I thought appeared on the record. Sure. Can I ask, I think that the district court in the course of sentencing talks about there being a group of people that he sentenced in connection with this. Mr. Baugh was the last? Yes, Your Honor. This was a very large multiple defendant credit card fraud case. And he was the last. The reason he was the last was not for any other reason than he was in state custody in Missouri while the other individuals were being prosecuted. For conduct that, but for him being convicted in Missouri, I think would have been relevant conduct in this case as well. So you don't make any argument that his sentence here is out of line with what was given to his co-defendants? No, Your Honor. In fact, this was additionally consolidated on appeal, and I believe Mr. Alpha Diallo, who it was consolidated before deconsolidation, received a higher sentence. I believe he received the statutory maximum. So no, Your Honor, I don't advance that position. And there were other people involved, and you don't? No, Your Honor, that is not. There's no disparate sentencing claim. And I see that I'm over my time. I would like to reserve some time for rebuttal. Thank you very much. Thank you so much for your consideration. All right, Ms. Fritz. May it please the Court? Good morning. Christine Fritz on behalf of the United States, and I'm asking you to affirm the judgment of the district court in this case. And I agree with Your Honors that it would have been easier and preferable for the court to quantify the extent of the downward departure, particularly because it was choosing to very upward. But this court has never demanded an interim calculation like that in the 5K setting. Defense counsel hasn't cited any particular case that says you must quantify the value of the 5K prior to proceeding to the 3553A standard. And perhaps that is in part because of the extensive discretion this court affords the district court in determining whether or not to depart downward. And that is an issue that we've raised here, whether there is jurisdiction. And I would note that the cases that I had found made very clear that so long as the court understood that it had the discretion to vary and it exercised its discretion and it was correct about the scope of its authority, this court doesn't look behind that. And even Pierce, one of the cases that was cited in the reply brief, that was a situation where the court thought that once a 5K motion was made, it had carte blanche authority to do whatever it wants based on whatever factors. The government appealed in that case because the government had requested a three offense level downward departure. And I believe the defendants received 20 and 24 level downward departures. And so I think that Pierce is completely consistent with this court's precedent, saying we look at whether the court understood the scope of its authority and discretion. And if it did, we're going to trust that district court's judgment. Ms. Fitts, can I ask you, I notice you're not, you weren't counsel below, but one of your colleagues, Mr. Gilmour, said to the district court toward the end of the sentencing, you know, the Fourth Circuit is picky, and so could you make this absolutely clear on the record? I wonder if you might go back to your office and suggest that they make the same kind of suggestion to the district court about this, because it would be clearer if we knew what the departure was. I agree, and that is absolutely something that I can take back and communicate to the office. And I had spoken with the AUSA who tried this case, and we talked about this. And I think that if we can deduce, at least from the context of this case, a range that this departure would have been in. I'd like to point out that the defendant himself requested a sentence of 48 months. The defendant requested 48 months, taking into account the extent of the cooperation, taking into account the fact that he had served a significant amount of time, or an amount of time in the Missouri prison, and then the other factors. So I think that if the defendant has recognized 48 months as a reasonable sentence, we could quantify this upward variance as being a 24-month upward variance. Now, and I think that on this record, it's highly unlikely that the district court would have awarded to the defendant more credit than the defendant himself believes he's entitled to. And again, the request by the defendant was on page 196, I think it's 195, 196, that a bottom-of-the-guideline sentence was appropriate. And the government has maintained that in this particular case, a plain error standard of review should apply to the 5K procedural argument. And the reason for that is the whole idea behind preservation is alerting the district court that there is an issue, and it gives the court the opportunity to either say, what I've done here is a problem, or to correct that. In this particular case, if defense counsel would have said, Your Honor, I'd like to clarify for my client's benefit how much credit he got. He could have resolved this very quickly. And I take Your Honor's suggestion that the government could have done the same thing. But it's something that could have been resolved easily. And this is a somewhat novel type of argument to say you have to quantify, you have to give a number for the 5K value. And I think that if that argument- It's always easier for the government to do it than it is for defense counsel to do it. When the court is going with the government. You take my point. I do. I absolutely agree with that. But my point is simply that this is sort of a novel request that I don't understand is being dictated by this court's precedent or by Supreme Court precedent, that after we've calculated the guidelines prior to any departures, you have to then articulate or quantify the exercise of discretion before moving on to the 3553A factors. And I think that with such a specific and discrete challenge to how a 5K was handled, it seems a little unfair to tell the district court, This was clearly wrong. You did this wrong. You needed to do this. Because I just don't think that the precedent out there dictates that result. And Judge Motts, you had asked a little bit about some of the sentences that the other defendants had received in this particular case. There were five defendants who were sentenced prior to Mr. Baugh, one of whom, for some reason, was sentenced by a different judge. One defendant, the defendant who came in very early and pleaded and got a very good deal to a single count of aggravated identity theft, received 24 months. Mamadou Bari, who was before a different judge, pleaded to different charges. It was aggravated identity theft and possession of 15 or more access devices. He received 54 months. Ibraham Berry received 42 months. Sai Kouberi received 84 months. And these individuals that I've just mentioned are generally, they were considered more the upper-level managers. Michelle Mundy, who pleaded guilty just to the conspiracy charge, she was what was described in the PSR as a team leader. She received time served. Alpha Diallo, with whom this case had originally been consolidated, received 94 months imprisonment. So there are two upper-level manager defendants who did receive greater time than this individual. And I think that the fact that – We're not making a point on that. I don't think you're doing well on that. No, specifically disavowed that. But thank you. And otherwise, I would point out that the district court, it was very familiar with this case. And as counsel has conceded, the Rule 35 discussion was quite extensive. And while the defendant might disagree with how the court looked at those factors, it was still thorough and the court has to be afforded a significant level of discretion. So even if the court should have done more in detailing its handling of the 5K motion, we submit that this sentence is absolutely substantively reasonable and that it should be affirmed. Thank you. Thank you. Ms. Selman. Thank you, Your Honors. I want to briefly address this notion that this Court places no precedent, has placed no parameters around what the Court should consider and what it should say when it grants a 5K motion. And again, the two lead cases on this, I believe, are United States v. Pierce and United States v. Fennell. The Pierce case is especially important. The judge granted the motion for the 5K. The government took issue with the extent of the departure. And this Court found that the rationale that the Court – so the Pierce Court was doing exactly the sort of thing that we are unable to do because of the trial court's failure to articulate. The Pierce Court looked at the rationale given by the sentencing court pursuant to 5K and said those aren't permissible 5K factors because you disagree with the law or you thought he was a nice guy. Those aren't permissible 5K factors for you to have given this guy 20 levels of downward departure. 5K is about the nature, value, extent of cooperation, and the things that are set forth in 5K. And so when deciding to depart – That was whether the reason – whether the 5K gate was satisfied. Here the Court says the 5K gate was satisfied, so that's not an issue. In other words, it wasn't because he liked the color of his hair or the accent that he spoke with or whatever. He granted the departure because of cooperation. Oh, but also in the Pierce case it was granted because of cooperation. I understand, but I don't know if I was in that case, but I'm familiar with it. Maybe I had it in another. It was a 1999 case, Your Honor, and I believe that the panel – you authored the opinion in that case, Your Honor. Well, then maybe that's why I remember it. That's unusual that I would remember. With thousands and thousands of cases, it's remarkable. So that's actually quite a credit to you. All right, I won't make any more comments. So, Your Honor, my point in saying that is then in Fennell, in the 2010 case, this Court states, and it says, this Court does not hold, and I'm quoting directly from the Fennell case at 592 F3D 506, this Court has never held a sentencing court must use a specific method in calculating a 5K1.1 departure. Rather, the court must only articulate its reasons for departing as it did. So here we have a court in Mr. Baugh's case that says you are getting a departure. But where the court falls, where the error is made, is the court did not articulate its reasons for departing as it did. And on this record, Your Honors, we do not know if the court departed at all. And Mr. Baugh, as he sits, does not understand how the court arrived at the 72-month sentence in this case. Let me ask you, the government suggests that this is a plain error review. What's your take on that? Your Honor, I think that United States v. Lynn controls the standard of review and that it's clearly abuse of discretion. United States v. Lynn obviously states that if the defendant at trial requests a sentence other than what he received, that the error is preserved. This Court wisely has noted that it's not very wise to argue with a district court once it's made a pronouncement. It is true, Your Honor, that a guideline sentence was requested. The court had already signaled to defense counsel on the record in this case, which you can see in the joint appendix, that it was very seriously considered in departing upward on Mr. Baugh. And the tone and tenor of the sentencing hearing was such that a far below-the-guideline sentence was not going to be prudent to be requesting on Mr. Baugh's behalf. Therefore, defense counsel requested a bottom-of-the-advisory-guideline sentence. And when the court varied upward, the Lynn error was preserved because Mr. Baugh requested something different than the sentence that was ultimately opposed, so abuse of discretion controls. Thank you, Your Honors. Thank you for your time. I notice that you were court-appointed also, and I want to thank you for it. I think your service has been very, very well done and will come down and greet counsel. As you know, it's important. We can't have public defenders in all cases of conflicts. This had multiple parties, and we rely on private attorneys for court appointments, so that's a good service to the court. Thank you, Your Honor. I'm pleased to be here. Thank you.
judges: Paul V. Niemeyer, Diana Gribbon Motz, Stephanie D. Thacker